## HAAS et al. v. ARDOIN (RICE GROWERS' CREDIT CORPORATION, Inc., Intervener).
### No. 1097.
Court of Appeal of Louisiana. First Circuit.
Jan. 24, 1933.

Haas & Haas, of Opelousas, for appellants.

Chappuis & Chappuis, of Crowley, for appellee.

LE BLANC, J.

This suit involves a contest over the proceeds of the sale of certain rice that was sold from a bonded warehouse, the warehouse receipt being held by the Rice Growers' Credit Corporation, Inc., intervener herein.

Plaintiffs are the holders of a certain note for the sum of $1,000 executed by the defendant K. J. Ardoin, the farmer who produced the rice. This note is dated Opelousas, La., April 27, 1931. It is made payable on or before September 15, 1931, and bears 8 per cent. per annum interest from maturity. It also contains the usual stipulation regarding attorney's fees if placed in the hands of an attorney for collection. The note is in a regular printed form, and on its face it would appear to have been intended for use as a rent note, for it bears in print, these words: "This note is given for rent of." Written in ink, following, are the words: "the Lake and also the following tracts of land, 106 acres of P. I. Land, 82 acres Chachere Land, 80 acres Ewell Land and 40 acres Damon Deville Land situated (this last word also in print) in Mamou, La."

In filing suit against the defendant Ardoin, plaintiffs allege in their petition that the said note was given by him for rent of water

from a certain lake, which water was used in making his rice crop of 1931, on which they therefore claim a privilege. They do not allege it, but it is clear that the privilege they claim is the one arising under the provisions of Act No. 26 of 1898. They asked for and obtained from the district judge a writ of sequestration ordering the seizure of approximately 1,600 bags of rice stored in the warehouse of Dolsy Guillory in Mamou, La. The notice of seizure filed in the record shows that the sheriff actually seized 903 sacks of rice.

The Rice Growers' Credit Corporation, Inc., had made advances to Ardoin for the making of this same crop, on which there was, according to the petition of intervention filed by it, a balance of $745.41 still due. In addition thereto, it is alleged that there were older accounts due by him, which, together with the balance due for advances in 1931, made a sum greatly exceeding the value of the rice that was stored in warehouse, and for all of which it held, as security, the warehouse receipt issued to Ardoin and which was indorsed in blank by him at the time it was delivered. Upon application, intervener obtained the release of the seized rice by executing a forthcoming bond in the sum of $1,000.

Plaintiffs and defendant Ardoin both make the same defenses to the claims of the intervener, those of the defendant being made more in the interest of the plaintiffs than his own. There are two affirmative defenses set out by their answers. The first is that plaintiffs' claim for water rent bears a lien and privilege on the defendant's rice crop that is superior to and outranks all other parties, including any claim of the intervener up to the sum of $1,000, and the second is that, at the time the warehouse receipt held by the intervener was delivered by Ardoin, there was a specific verbal agreement made between them that the plaintiffs' claim for water rent would be paid out of the proceeds from the sale of the rice stored in warehouse. As an alternative defense, the plaintiffs claim that if the intervener has any privilege on the proceeds of the rice, it is limited to the sum of $745.41 as set forth in the petition of intervention, and that it has no right to claim the surplus value of the rice.

From a judgment which rejected their claims and maintained the intervention and third opposition of Rice Growers' Credit Corporation, Inc., the plaintiffs have taken this appeal.

They have filed an exception of no cause of action to the petition of intervention in this court, but, as the issues raised thereunder appear to be the same as those that come up on the merits of the case, they all will be considered together.

From the testimony, a lot of which may be said to be irrelevant to the two issues presented, it appears that Ardoin was heavily indebted unto the Rice Growers' Credit Corporation, both for advances for the year 1931 and for some older accounts. On October 28, 1931, after certain adjustments had been made, it was determined that he owed $4,438.31. He had on hand on that date 1,623 bags of Blue Rose rice, which, it was agreed, he would store in a public warehouse at Mamou, La., and turn over the warehouse receipt to the Rice Growers' Credit Corporation to secure a note that he was to give covering his entire indebtedness as previously determined. This note he duly executed on October 29, 1931, and at the same time, or shortly thereafter, indorsed and turned over the warehouse receipt issued to him by the Mamou warehouse, as collateral security therefor. In due course, this stored rice was sold, but had not all been delivered on the day plaintiffs obtained the order of sequestration. From the proceeds of sale accounted for up to that date, there was enough to take care of the advances of 1931 made by the credit corporation except the sum which was calculated as being approximately $745.41 as alleged in the petition of intervention. After the sale of the rice which had been seized, and all proceeds collected, it was definitely ascertained that the balance due for advances was $725.46 instead of the sum alleged, and that there remained a surplus of $1,395.51 which intervener contends it had the right to apply on its note which was secured by the warehouse receipt.

The only hope that plaintiffs can have of being paid their note out of the surplus has to be based upon their being able to prove the verbal agreement said to have been made by the Rice Growers' Credit Corporation with Ardoin that the note would be taken care of in the distribution of the proceeds from the sale of the rice, or that they enjoyed a privilege by virtue of being furnishers of water within the terms of Act No. 26 of 1898. Upon them rested the burden of proof under either or both of their contentions.

With regard to the alleged verbal agreement made by intervener with Ardoin to the effect that the note of $1,000 would be paid, plaintiffs have certainly failed to show by a preponderance of the testimony that there was such an understanding and agreement. They have offered, as evidence on that point, the testimony of Ardoin, only, which is denied by C. E. Carnes, the representative of the Rice Growers' Credit Corporation who had the transaction in charge for his company and handled all the details connected therewith.

Article 2277 of the Revised Civil Code provides that all contracts for the payment of money, where the amount is above $500, must be proved at least by one credible witness, and other corroborative circumstances. The alleged contract here involved, was for the sum of $1,000, and no attempt to prove same was

offered beyond the testimony of one witness. No corroborative circumstances whatever appear in the record. On the contrary, when we search for circumstances, we find one that seems rather to support the testimony on the other side. We refer especially to the memorandum made at the time of the adjustment of accounts between intervener and Ardoin, copy of which is filed in the record. It was from data included in this memorandum that the amount of $4,438.31 embodied in the note given by Ardoin was arrived at. Had there been such an agreement as is testified to by Ardoin, it seems strange that the $1,000 note would not have been included in the total that went up to make the note that was to be secured by the warehouse receipt. This memorandum seems to have included every item that was agreed upon. It was written by H. M. Bone, president of the Rice Growers' Credit Corporation, and taken down as given to him by C. E. Carnes while the latter was discussing the matter with Ardoin. Bone says that there was a carbon copy made of the memorandum which was given to Ardoin. The latter does not deny this, but says merely that he does not remember that Carnes ever gave him a copy of it. On this issue, we find that the judgment of the lower court holding that there was no such agreement or contract as claimed by the plaintiffs regarding the payment of their note by Rice Growers' Credit Corporation, Inc., is correct and should be sustained.

 Coming now to a discussion of the privilege claimed by the plaintiffs as furnishers of water, we find that the law governing that privilege, Act No. 26 of 1898, provides:

"That any person, association of persons or corporations who shall furnish water to another for the purpose of aiding or assisting him in the growing or maturing of a crop, shall have a privilege coequal with the privilege for supplies upon said crop to secure the payment of the agreed compensation therefor."

It would seem to us that the act contemplates a specific agreement between the party furnishing the water and the one who uses it, if the privilege is to come into existence. That agreement would necessarily have to provide that the water is to be furnished for and will be used for the very purpose intended under the act, and that a definite price or method of compensation would have to be fixed. Instead of such an agreement, we find here that the plaintiffs rely on an obligation arising on a promissory note, the consideration of which, on its face, appears to be for rent, and which rent is not for water that is to be furnished for any particular pur-

pose, but merely of a lake, together with four tracts of land aggregating 368 acres. It would require a rather strained construction to convert such an obligation as we have before us into a privilege claimed under the act quoted from. Privileges are stricti juris and cannot be extended by implication or analogy. As stated by the court in Boylan's Detective Agency & Protection Police v. Arthur A. Brown & Co., 157 La. 325, 326, 102 So. 417, 419, "The rule is too familiar to need citation of authority that privileges are never allowed, except when expressly granted, and only by virtue of compliance with the legal requisites essential to their creation and existence."

In this case, the consideration, as appears from the note executed by the defendant Ardoin, was the sum of $1,000 for rent of the lake and several tracts of land as well. Granting, as testified to by one of the plaintiffs, that the principal consideration was for the rent of the lake, it nevertheless appears that part of the land included in the rent was cultivated in corn and no doubt was the object of part of the consideration also. Whether other parts of the rented land were used or not, the fact remains that it was all included in the contract and was subject to use by the defendant.

It strikes us that in the way in which this obligation was drawn, it can hardly be said that there was an agreed compensation for the use of the water from that lake for the purpose of growing and maturing defendant's rice crop. Even though it be conceded that the parties intended that the water was to be furnished within the contemplation of the statute, there was still lacking the agreed compensation which is an essential requirement in order to bring the privilege into existence. Ferre Canal Co. v. Burgin, 106 La. 309, 30 So. 863.

We are of the opinion that, on this point also, the judgment of the district court is correct.

 As an alternative demand, plaintiffs prayed that they be entitled to recover the surplus over the balance that was due intervener for its advances, from the proceeds of the sale of the rice. If they had had a privilege, they could have recovered concurrently with the intervener as their privilege would have been coequal with that for advances. Without privilege, however, they have no claim as against the intervener, holder of the negotiable warehouse receipt.

Intervener was correctly adjudged entitled to the proceeds.

**Judgment affirmed.**